UNITED STATES

v.

Jeffrey E. HOTCHKISS, Seaman, U. S. Coast Guard.

CGCMR 23572.
Docket No. 834.

U. S. Coast Guard Court of Military Review.

25 May 1982.

Trial Counsel: LT Thomas J. DONLON, USCG.

Defense Counsel: LT Ronald L. NELSON, USCG.

Assistant Defense Counsel: LT Bernard J. ROAN, USCG.

Appellate Defense Counsel: LCDR R. W. FERGUSON, USCG.

Appellate Government Counsel: LT D. J. ST. JAMES, USCGR.

## OPINION

MORGAN, Chief Judge:

Seaman Jeffrey E. HOTCHKISS, USCG, was tried by a special court-martial comprised of a military judge and members at Governors Island, New York, on 28 May 1980. The accused pleaded guilty to and was convicted of specifications alleging, respectively, possession of marijuana on 16 April 1980, introduction of marijuana on 15 April 1980, use of marijuana on 16 April 1980 and possession of marijuana from 19 February 1980 until 14 April 1980 all at U. S. Coast Guard Training Center, or U. S. Coast Guard Support Center, Governors Island in violation of the provisions of Article 9–2–15, U. S. Coast Guard Regulations, CG–300, and Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. The members sentenced the accused to be confined at hard labor for one month, to forfeit $364.00 per month for one month and to be dis-

charged from the service with a bad conduct discharge. The findings of guilty and the sentence were approved by the convening authority and by the officer exercising general court-martial jurisdiction.

Appellate defense counsel has filed an assignment of errors alleging (1) that the specifications fail to state offenses since Article 9–2–15 of Coast Guard Regulations on which they are based is not punitive; (2) that the accused is entitled to disapproval of the bad conduct discharge due to unreasonable delay in the review of his case; and, (3) that the accused was prejudiced as to the sentence by the admission of improper evidence during the sentencing phase of the trial.

■ We have recently addressed the issue of whether Article 9–2–15 of U. S. Coast Guard Regulations is a punitive general regulation enforceable under Article 92, UCMJ, and concluded that it is. *U. S. v. Kennedy,* 11 M.J. 669 (C.G.C.M.R.1981). Thus, the appellant's contention to the contrary is without merit.

Sentence was adjudged 28 May 1980. The convening authority took action on the record 11 July 1980. The legal officer for the officer exercising general court-martial jurisdiction did not submit his review of the record until 26 November 1980 and the supervisory authority action was not taken until 5 February 1981, some 253 days after the sentence was adjudged. In commenting on the legal officer's review pursuant to *U. S. v. Goode* 1 M.J. 3 (C.M.A.1975), trial defense counsel noted the absence of any explanation for the failure of the officer exercising general court-martial jurisdiction to take action on the record within 180 days after sentence was adjudged as required by Part 506–5(b) of the Coast Guard Military Justice Manual, COMDTINST M5810.1. In his reply, the legal officer stated that an accounting for the delay would be made in a letter transmitting the record of trial to the Commandant. Neither a letter of transmittal from the officer exercising general court-martial jurisdiction nor an explanation of his delayed action on the case accompanied the record when it was re-

ferred to this Court for review pursuant to Article 65(b), UCMJ, 10 U.S.C. § 865(b).

On 30 July 1981 appellate government counsel filed with the Court a letter from the officer exercising general court-martial jurisdiction to the Commandant entitled "*U. S. v. HOTCHKISS,* SPCM, Reconstructed letter of transmittal." The letter relates that an original letter of transmittal including an explanation of the delay in taking action in the case was prepared in February 1981 but inexplicably was not forwarded with the record of trial and had been lost. An explanation of the delay from the date sentence was adjudged until the officer exercising general court-martial jurisdiction acted on the record then follows. A novel portion of the explanation attributes an unspecified period of the delay to reconstruction and reorganization of the district legal offices with all work except for the construction of new offices being accomplished by district legal personnel.

■ Neither the delay in the review process while the legal personnel refurbished their offices nor the delay attributed to other causes in the reconstructed letter of transmittal constituted the truly extraordinary circumstances required by the Court of Military Appeals to justify either pretrial or posttrial delay. See *U. S. v. Marshall,* 22 U.S.C.M.A. 431, 47 C.M.R. 409 (1973); *U. S. v. Stevenson,* 22 U.S.C.M.A. 454, 47 C.M.R. 495 (1973); *U. S. v. Larsen,* 23 U.S.C.M.A. 564, 50 C.M.R. 783 (1975). However, the appellant has failed to demonstrate any prejudice resulting from the posttrial delay in his case which would entitle him to relief. See *U. S. v. Banks,* 7 M.J. 92 (C.M.A.1979); *U. S. v. Green,* 4 M.J. 203 (C.M.A.1978); *U. S. v. Burns,* 2 M.J. 78 (C.M.A.1976); *U. S. v. Gray,* 22 U.S.C.M.A. 443, 47 C.M.R. 484 (1973).

Following announcement of the findings of guilty and before the members were called, the military judge considered various motions filed by defense counsel and received evidence pertaining to sentencing offered by both the government and the defense. Among the motions filed by defense counsel was one entitled "Motion for Ap-

propriate Relief in the nature of a *MOTION IN LIMINE*" in which the military judge was asked to "direct the Trial Counsel to avoid presenting in aggravation any references to uncharged misconduct on other matters not directly related to the charged offenses of this case." The discussion of this motion by counsel and the military judge revealed that the defense was seeking the suppression of evidence which would support an inference by the court members that, in addition to possession, introduction and use, the accused was also engaged in selling marijuana. The military judge ruled that the government could present the real evidence seized from the accused but that trial counsel should not "make any impressions or suggestions to the court that [the accused] was going to sell it." The military judge also assured the defense counsel that he "would have no hesitation to grant a mistrial if the defendant becomes prejudicially affected by the evidence that's brought forth by a particular witness."

During the same Article 39(a), UCMJ, 10 U.S.C. § 839(a), session the military judge admitted as prosecution exhibits nearly a pound (426 grams) of marijuana consisting of seven approximately equal small quantities in plastic bags and a large quantity in another plastic bag, two metal pipes containing traces of marijuana and what the trial counsel represented to be two marijuana test kits. Defense counsel interposed a separate specific objection to the admission of the test kits on the ground that they were irrelevant. The objection was overruled.

After the court with members had assembled the trial counsel called Boatswain's Mate First Class Joseph JOHNSON, USCG, as a witness. BM1 JOHNSON testified that on the morning of 16 April 1980 he participated in a search of the defendant's room. He identified the marijuana, pipes and test kits formerly admitted in evidence as items which he seized from the accused on the morning of 16 April. He identified the test kits as being for the testing of marijuana and LSD. BM1 JOHNSON also testified concerning discussions he had with

Seaman HOTCHKISS concerning the seized items immediately following the search of his room and again approximately two days later. During these discussions the accused said that he brought the marijuana onto the Training Center the night of 15 April 1980. About 0700 the next morning he started to weigh it out and put it in smaller bags. In the process he sampled some of the substance smoking it in a water pipe or bhong which was before the court. Seaman HOTCHKISS also told BM1 JOHNSON that he often would smoke marijuana in his room before going to class in the mornings. A question by a court member concerning the nature of the test kits brought a repeat of BM1 JOHNSON's testimony that one was a field test kit for marijuana and the other was a field test kit for LSD. Another question by a court member later in the trial as to the cost of 450 grams of marijuana in the New York area produced a statement by the military judge that "It's $300.00 per pound [in the Miami area]".

During an Article 39(a), UCMJ, session following BM1 JOHNSON's testimony the defense counsel renewed his objection to the admission of the test kits. He objected particularly to the inflammatory nature of the LSD test kit, stating that he was completely surprised by the evidence that one of the kits was, in fact, for testing LSD. The military judge informed the defense counsel that he was not going to declare a mistrial but that in view of a prosecution offer to withdraw the LSD test kit he would give an instruction limiting the members' consideration of evidence of uncharged misconduct if the defense requested such an instruction. The military judge did ultimately instruct the members that the LSD test kit had been withdrawn from evidence and should not enter into their deliberations in any way. No other limiting instruction was given.

Paragraph 75*b*(3) Manual for Courts-Martial, 1969 (Rev.) in effect at the time of this trial provided:

"If a finding of guilty of an offense is based upon a plea of guilty and available

and admissible evidence as to any aggravating circumstances was not introduced before the findings, the prosecution may introduce that evidence after the findings are announced. See 70 in this connection."

 The Court of Military Appeals has said that the rules for the admissibility of evidence of any aggravating circumstances or other offenses or acts of misconduct are grounded on relevance and materiality. See *U. S. v. Worley*, 19 U.S.C.M.A. 444, 42 C.M.R. 46 (1970). See also *U. S. v. Vickers*, 10 M.J. 839, 842 (N.C.M.R.1981) petition for review by USCMA granted 11 M.J. 416. Matters permitted in aggravation must go to the particular offense of which the accused has been convicted, not to general denigrations of the accused or to unrelated incidents. See *U. S. v. Schreck*, 10 M.J. 563 (A.F.C.M.R.1980); *U. S. v. Roberts*, 18 U.S. C.M.A. 42, 39 C.M.R. 42 (1968).

Neither the test kits nor Seaman HOTCHKISS' admissions to BM1 JOHNSON that he had started weighing the marijuana out the morning of 16 April 1980 and that he often smoked marijuana in his room before going to class were relevant to any issue before the court. Possession of the test kits and the facilities for weighing marijuana, standing alone, perhaps would not constitute evidence of other misconduct as did JOHNSON's testimony that the accused admitted the frequent use of marijuana. Nevertheless, that evidence together with other evidence properly placed before the court members could only portray the accused as an habitual user of marijuana and a trafficker in both marijuana and LSD. The significance of this evidence was not lost on the members of the court as was demonstrated by their request that BM1 JOHNSON repeat his testimony respecting the nature of the test kits and by the inquiry respecting the value of the marijuana which inspired the military judge's gratuitous assertion that it was worth $300.00 in Miami.

 Evidence of uncharged misconduct may not be considered by a court for sentencing purposes unless it was properly admitted during the course of the trial. See *U. S. v. Worley, supra; U. S. v. Turner*, 16 U.S.C.M.A. 80, 36 C.M.R. 236 (1966); *U. S. v. Mandurano*, 1 M.J. 728 (A.C.M.R.1975); *U. S. v. Poinsett*, 3 M.J. 697 (A.F.C.M.R. 1977), petition for review by USCMA denied 3 M.J. 483; *U. S. v. Brown*, 8 M.J. 749 (A.F.C.M.R.1980). We believe that this same rule should be applied to evidence, not otherwise relevant, which could only raise an inference of uncharged misconduct. In the case before us neither the evidence of uncharged misconduct nor the principal evidence raising a clear inference that the accused was an illicit dealer in controlled substances was properly before the court. The military judge's belated instruction to the members to disregard only the LSD test kit could have had little effect. Under the circumstances we believe that prejudice to the accused with respect to the sentence is manifest. See *U. S. v. Turner, U. S. v. Poinsett* and *U. S. v. Brown*, all *supra.*

The findings of guilty are affirmed. The officer exercising general court-martial jurisdiction may order a rehearing on the sentence. Otherwise, he may reassess the sentence and approve a sentence not including a bad conduct discharge.

Judges HOLLAND, VERSAW, BEAVER and BRIDGMAN concur.